IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| **EKRAS ENTERPRISES, INC.**, | : | CASE NO. **26-60465**-PWB |
| Debtor. | : | |
| AMUR EQUIPMENT FINANCE, | : | |
| Movant, | : | |
| v. | : | CONTESTED MATTER |
| EKRAS ENTERPRISES, INC., Debtor; and KYLE A. COOPER, Trustee, | : | |
| Respondents. | : | |

**NOTICE OF HEARING**

**PLEASE TAKE NOTICE** that **Amur Equipment Finance** has filed a Motion for Relief from Automatic Stay and related papers with the Court seeking an order of relief from the Automatic Stay.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion for Relief from Automatic Stay, on **September 15, 2026**, the calendar call for which will be at **10:00 AM**, in **Courtroom 1401**, **The Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303**, which must be attended in person, unless the Court orders otherwise.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings, or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file

a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk before the hearing. The address of the Clerk's Office is Clerk, U.S. Bankruptcy Court, Room 1340, U.S. Courthouse, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the Motion cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: August 13, 2026 Signature: /s/Philip L. Rubin

Philip L. Rubin
5555 Glenridge Connector
Suite 900
Atlanta, Georgia 30342
(404) 869-6900
prubin@lrglaw.com
Bar Number 618525

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| **EKRAS ENTERPRISES, INC.**, | : | CASE NO. **26-60465**-PWB |
| Debtor. | : | |
| AMUR EQUIPMENT FINANCE, | : | |
| Movant, | : | |
| v. | : | CONTESTED MATTER |
| EKRAS ENTERPRISES, INC., Debtor; and KYLE A. COOPER, Trustee, | : | |
| Respondents. | : | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

NOW COMES AMUR EQUIPMENT FINANCE (the "Movant") and moves this Court for relief from the automatic stay and shows the Court as follows:

1.

On August 5, 2026, EKRAS Enterprises, Inc. ("Debtor") filed a Voluntary Petition pursuant to 11 U.S.C. Chapter 7, and said case is pending before this Court.

2.

Movant has a net claim in this case secured by a first priority lien against Debtor's vehicle, to wit: 2023 SKID STEER & 2022 IRON RHINOA EXCAVATOR (the "Collateral"). The approximate payoff is $68,084.44. Loan documents supporting the claim are served herewith on the parties. Debtor is currently delinquent $7.179.30 to Movant.

3.

Movant does not have proof of insurance protecting its interest in the Collateral or has been advised that there is no insurance in force.

4.

Debtor does not have equity in the Collateral and the Collateral is not necessary to a reorganization that is in prospect. There is no equity in the Collateral to benefit the estate and the Trustee's interest should be abandoned.

5.

Cause exists including the lack of adequate protection to grant Movant relief from the automatic stay so as to authorize Movant to recover and dispose of the Collateral. Movant requests the right to file an amended proof of claim after liquidation of the Collateral.

6.

Movant requests that Bankruptcy Rule 4001(a)(4) be waived.

WHEREFORE, Movant prays that this Court:

(a) Hold a hearing pursuant to this Motion within thirty (30) days as is required under 11 U.S.C. Section 362(e);

(b) Grant Movant relief from the automatic stay under 11 U.S.C. Section 362(d) so as to allow Movant to recover and dispose of the Collateral and to apply the net proceeds generated therefrom to its claim in this case, and if the disposition results in a deficiency, amend its claim filed in this case, subject to objection;

(c) Rule 4001(a)(4) be waived; and

(d) Grant such other and further relief as the Court deems to be just and proper.

This August 13, 2026.

The Law Office of
LEFKOFF, RUBIN, GLEASON, RUSSO & SMITH, P.C.
Attorneys for Movant

By:/s/ Philip L. Rubin
Philip L. Rubin
Georgia State Bar No. 618525

5555 Glenridge Connector
Suite 900
Atlanta, Georgia 30342
(404) 869-6900
prubin@lrglaw.com

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE | : | CHAPTER 7 |
| **EKRAS ENTERPRISES, INC.**, | : | CASE NO. **26-60465**-PWB |
| Debtor. | : | |
| AMUR EQUIPMENT FINANCE, | : | |
| Movant, | : | |
| v. | : | CONTESTED MATTER |
| EKRAS ENTERPRISES, INC., Debtor; and KYLE A. COOPER, Trustee, | : | |
| Respondents. | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2026, I electronically filed the foregoing MOTION FOR RELIEF FROM AUTOMATIC STAY and NOTICE OF HEARING using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following parties who have appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

Will B. Geer
Rountree, Leitman, Klein & Geer, LLC
Century Plaza I, Suite 350
2987 Clairmont Road
Atlanta, GA 30329

Kyle A. Cooper
Chapter 7 Trustee
120 Travertine Trail
Alpharetta, GA 30022

I further certify that on this day I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties at the address shown for each:

EKRAS Enterprises, Inc.
275 Etowah Downs Court
Ball Ground, GA 30107

Dated: August 13, 2026.

The Law Office of
LEFKOFF, RUBIN, GLEASON, RUSSO & SMITH, P.C.
Attorneys for Movant

By: /s/ Philip L. Rubin
Philip L. Rubin
Georgia State Bar No. 618525

5555 Glenridge Connector
Suite 900
Atlanta, Georgia 30342
(404) 869-6900
prubin@lrglaw.com

DocuSign Envelope ID: [redacted]
THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

AMUR

| Customer No. | Contract No. |
|---|---|
| [redacted] | [redacted] |

# EQUIPMENT FINANCE AGREEMENT

| Customer (also you or your) | Ekras Enterprises, Inc | Address | 4000 N Henry Blvd, Stockbridge, GA 30281-3816 |
|---|---|---|---|

**Amur Equipment Finance, Inc.** (**Secured Party**, also **we**, **us** or **our**) agrees to provide to you the Financed Amount subject to the terms and conditions of this EFA.

**1. Key Definitions**

| Financed Amount | Term | Required Initial Payment | Periodic Payment | Payment Frequency | Balloon Payment | Security Deposit |
|---|---|---|---|---|---|---|
| $99,500.00 | 72 Months | $0.00 | $1,995.57 | Monthly | N/A | N/A |

**EFA** means this equipment finance agreement and all schedules, exhibits, addendums and amendments thereto (also referred to as **Contract**).
**Contract Documents** refer to this EFA and all agreements and documents related thereto (excluding any Guaranty) described as Contract Documents and identified by the above Contract Number.
**Obligations** means all your payment and performance obligations under this EFA and all other Contract Documents.
**Equipment** means the equipment and/or personal property financed hereunder by us and described in **Schedule A**.
**Collateral** means the Equipment and any additional collateral pledged to us to secure the Obligations as described in **Schedule A**.
**Guaranty** means any written guaranty of your Obligations hereunder; **Guarantor** refers to any person or entity that signs a Guaranty.
**Funding** means any portion of the Financed Amount we pay to a designated vendor or reimburse to you.
**Payment Due Date** means, throughout the entire Term, the same numeric day of each month as we will advise you.

2. **Term.** The Term shall commence on the first Payment Due Date. However, your Obligations and our rights hereunder shall begin the day we execute this Contract, which shall remain in full force and effect, together with all Contract Documents, until you have completely and indefeasibly discharged all Obligations.

3. **Unconditional and Non-Cancelable Obligations.** YOUR PAYMENT AND ALL OTHER OBLIGATIONS UNDER ALL CONTRACT DOCUMENTS ARE ABSOLUTE, UNCONDITIONAL AND IRREVOCABLE AND NOT SUBJECT TO ABATEMENT, REDUCTION, SET-OFF, CLAIM, OR DEFENSE FOR ANY REASON WHATSOEVER, WHETHER ARISING OUT OF ANY PAST, PRESENT OR FUTURE CLAIM AGAINST US, A VENDOR, THE COLLATERAL, ANY THIRD PARTY, A CASUALTY OR EVENT BEYOND YOUR CONTROL. YOU CANNOT CANCEL OR TERMINATE THIS EFA OR ANY OTHER CONTRACT DOCUMENT FOR ANY REASON.

4. **Disclaimer of Warranties.** You acknowledge and agree that: (i) you selected the Equipment, accept it AS IS and WE MAKE NO EXPRESS OR IMPLIED WARRANTIES WHATSOEVER AS TO ITS MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE; (ii) you acknowledge and agree that you selected any software included with the Collateral (the **Software**), you assume all liability related to any unauthorized access or use of the Software and any data collected, stored or used by it (the **Data**) and we do not own or license any Software or Data nor have any duty to configure, maintain and/or otherwise safeguard them; (iii) YOU WAIVE AGAINST US, AND WE SHALL NOT BE LIABLE FOR, ANY CLAIM FOR LOSS, INJURY OR DAMAGE CAUSED BY ANY COLLATERAL AND/OR CONTRACT DOCUMENT, INCLUDING BUT NOT LIMITED TO, ALL SPECIAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE OR EXEMPLARY DAMAGES; (iv) you shall look only to the vendor or manufacturer (not us) [illegible] claim related to Equipment or Software, which shall not relieve you or any Guarantor from any responsibilities [illegible] hereunder.

5. **Security Interest.** To secure your performance of the Obligations, you grant us a first priority security interest in the Collateral (the **Security Interest**). Failure to perfect our Security Interest in any Collateral shall not affect or impair your Obligations or those of any Guarantor. You have or will have upon acquisition of the Equipment good and marketable title to the Collateral and shall maintain such title until all your Obligations have been satisfied. You shall not sell, transfer, lease, assign, relinquish possession or otherwise dispose of the Collateral, which is and must remain free and clear of any security interest, lien or encumbrance of any kind (except our Security Interest) and be under your control at all times. You shall give us immediate notice of any unpermitted liens, claims or [illegible] and cause them to be immediately and irrevocably removed at your expense. You shall title and/or register any eligible Collateral as directed by us.

6. **Payment Obligations**
   (a) You promise to pay to us in good and immediately available funds, with or without notice or demand, all the amounts listed herein (each, a **Payment**).
   (i) The Required Initial Payment, any Security Deposit and the Transaction Fees (all as described in the Document Package Checklist) prior to us advancing any Funding. If we choose not to execute this EFA for any reason, we will return any Required Initial Payment, Security Deposit and title fees not incurred but keep the balance as liquidated damages.
   (ii) Throughout the Term at the Payment Frequency, each Periodic Payment on the applicable Payment Due Date.
   (iii) At the end of the Term, the Balloon Payment, if any.
   (iv) A **Per Diem** amount, which shall constitute interest on the Financed Amount and be calculated as 1/30th of the highest Periodic Payment amount for each day between the last Funding and the first Payment Due Date.
   (v) All costs and expenses, whether incurred by us, counsel and/or agents, related to the Contract Documents, such as due diligence, documentation, searches and inspection costs, as well as fees and expenses to establish, perfect, protect or enforce our rights, interests and remedies, irrespective of whether you or any Guarantor is in default of any obligation to us.
   (vi) Any other amounts due under this EFA or any other Contract Document.
   (b) We shall apply all Payments in our sole discretion to satisfy the Obligations and disregard any restrictive endorsement.
   (c) You authorize us to increase any applicable Payment by up to 15% or decrease them without limit to reflect a corresponding change in the Financed Amount; any such increase or decrease will be reflected in our billings to you.
   (d) You agree to pay: (a) for each Payment we do not receive in full within ten (10) days of its due date, a late charge equal to the greater of (i) 10% of such late Payment and (ii) a minimum amount determined by our then-applicable fee policy; (b) for each returned ACH debit charge or check, a fee determined by our then-applicable fee policy.

7. **Security Deposit.** We may commingle any Security Deposit with our assets and apply it to any Obligation at our sole discretion, after which you agree to replenish it. Any unused portion will be remitted to you, without interest, upon full performance of the Obligations.

8. **Collateral Condition, Maintenance and Inspection**
   (a) YOU SHALL USE THE COLLATERAL FOR BUSINESS PURPOSES ONLY.
   (b) You shall keep at all times the Collateral at the location(s) specified on Schedule A or as otherwise disclosed to us, except you may move any mobile Collateral within the U.S. in your normal course of business provided it returns to such location(s) on a regular basis.
   (c) You are responsible for properly installing, operating, maintaining, [illegible] and registering the Collateral and for keeping it in the same condition as when delivered to you, except for ordinary wear and tear. You shall not alter the Collateral without our prior written consent or make it part of any real property. Any additions or improvements to the Collateral shall be deemed a permanent accession thereto subject to our Security Interest.
   (d) Upon our written request, you shall prominently label the Collateral as being subject to our Security Interest.
   (e) We may inspect the Collateral [illegible] documentation at any reasonable time.

9. **Insurance and Risk of Loss**
   (a) You agree to keep the Collateral insured against loss and liability under terms and with insurers acceptable to us (the **Required Coverage**) and to have us named as lender's loss payee and additional insured. Upon demand, you agree to provide us with valid evidence of the Required Coverage.
   (b) If you fail to maintain the Required Coverage (and without us waiving any resulting default), we have the right to purchase, at your expense, insurance to protect our interests, in which case you acknowledge and agree that we are not a reseller of insurance and the amount we bill you may be higher than what your insurance provider could have charged you and include a profit for us as well billing and processing fees.
   (c) You shall bear the entire risk of loss, theft, damage, destruction or requisition (each, a **Casualty**) of the Collateral from any cause whatsoever. You shall promptly notify us in writing of any Casualty and follow our directive by either (i) placing the affected Collateral in its pre-Casualty condition at your sole cost and expense or (ii) paying all remaining Obligations, less any Casualty proceeds received by us.

10. **Taxes.** You are required to report and pay when due all personal property taxes on the Collateral. You are required to pay when due all other taxes, fees, assessments, interest, penalties and other governmental charges arising hereunder, including, without limitation, all other personal property, excise, use, sales and gross receipts taxes (excluding our income taxes), plus user fees, tolls and fines (collectively, the **Taxes**), even if we may, in our sole discretion, elect to pay any Taxes directly to the appropriate taxing authority on your behalf, in which case you agree to promptly reimburse us that cost.

11. **Representations and Other Agreements**
    (a) You are and shall remain (i) duly organized, validly existing and in good standing under the laws of the state of your organization and are and (ii) duly qualified and licensed to do business wherever necessary.
    (b) You shall give us at least thirty (30) days' prior written notice before you change your name, mailing address or place of business.
    (c) You have adequate power and capacity to enter into this EFA and all other Contract Documents, which have been duly authorized, executed and delivered by, and constitute valid, legal and binding agreements enforceable against, you.
    (d) Except as previously set forth in writing to us, you do not require a governmental or other approval to enter into the Contract Documents and your execution thereof does not violate any judgment, regulation or law.
    (e) All information you furnish to us is true, complete, correct and not misleading.
    (f) You are not party to any legal proceeding and agree to comply with all Federal, state and local laws and regulations.

12. **Default.** Any of the following shall constitute a Default under this EFA:
    (a) We do not receive any one Payment as and when required hereunder.
    (b) You breach or fail to perform any obligation, provision and/or condition of this EFA or any other Contract Document.
    (c) You or any Guarantor shall default under any other financial obligation or real property lease.
    (d) You or any Guarantor shall have made an untrue or misleading statement or representation.
    (e) You or any Guarantor takes any action to: (i) cease, suspend or wind up its respective business; (ii) terminate its existence (or if an individual, he or she dies or is adjudicated as incompetent); and/or (iii) transfer any portion of its ownership to, merge with or convey or dispose of substantially all of its assets to, any person or entity (each, a **Dissolution Event**).
    (f) You or any Guarantor (i) becomes insolvent, (ii) takes any action under (or is involuntarily placed in) any bankruptcy, reorganization, insolvency, receivership or other similar proceedings for the relief of debtors or benefit of creditors; and/or (iii) makes an assignment for the benefit of creditors or admits its inability to pay its debts as they become due (each, an **Insolvency Event**).

DocuSign Envelope ID: [redacted]

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

AMUR

Contract No. [redacted]

**13. Remedies.** Upon the occurrence of a Default, we can elect to declare you in default of this EFA and any other Contract Document and, subject to applicable law, exercise cumulatively any or all of the following remedies without notice to you or any Guarantor:

(a) Require that you pay us the sum of the following amounts (collectively, the **Accelerated Amount**) calculated as of the date of your Default:
   (i) All accrued and unpaid Periodic Payments;
   (ii) The present value of all remaining Periodic Payments and any Balloon Payment, all accelerated and discounted at an annual percentage rate equal to 3.00%;
   (iii) All other Payments due hereunder;
   (iv) All of our Enforcement Costs (as defined below); and
   (v) A daily default interest equal to the lower of (1) an 18.00% annual percentage rate and (2) the highest amount allowed by law, applied to all sums due hereunder until paid to us.

(b) Demand turnover of the Collateral, which you shall immediately do at your expense as directed by us while preserving it in a marketable condition.

(c) Enter any premises where the Collateral is located to inspect, render unusable or take immediate possession of it, with or without demand, notice, court order or other process of law and without liability to us. In this case, you irrevocably waive to the fullest extent permitted by law any bond, surety or security required as an incident of such action.

(d) Sell, lease or otherwise dispose of the Collateral at a public or private sale, with minimum ten (10) days' notice.

(e) Pursue one or more remedy available to us under any Contract Document, any Guaranty, the Uniform Commercial Code (the UCC), any other applicable law and/or in equity.

As material inducement for us to enter into this EFA, you expressly agree that the Accelerated Amount (i) represents a reasonable estimate of the anticipated harm we will suffer from a Default, such harm being difficult to ascertain accurately due to the variability of our operating, financing and other costs and (ii) compensates us for the loss of our bargain, including all costs, expenses and fees arising from such Default.

**14. Enforcement Costs.** Whether or not you or any Guarantor are in default and/or in bankruptcy, you shall be obligated to pay us all Enforcement Costs, which represent all attorney's fees, other legal fees as well as all costs and expenses we incur, in the exercise or preservation of our rights or remedies and/or our efforts to enforce judgments, under this EFA, any Contract Documents or Guaranty, including all expenses related to the turnover, recovery, repossession, preservation, refurbishing, advertising, sale, re-lease or other disposition of any Collateral.

**15. Assignment**

(a) You may not assign, delegate or transfer any of your rights or responsibilities under any Contract Document, which shall remain binding upon you, your heirs, successors and assigns.

(b) We may sell, transfer, assign or otherwise convey to any affiliated or unaffiliated person or entity (an **Assignee**), without notice to you or your consent, any or all of our rights, interests and benefits (in whole or in part) under this EFA (including Payments due hereunder), any other Contract Document, a Guaranty or the Collateral (an **Assignment**). Upon any Assignment, you acknowledge that: (i) such Assignee shall have the rights, interests and [illegible] we [illegible], but none of our obligations under any assigned Contract Documents; (ii) such Assignee['s] [illegible] shall not be subject to any claim, defense or set-off that you or [illegible] may have [against] us; (iii) you shall perform all the Obligations hereunder [illegible] Assignee [as] required under [such] Assignment, and (iv) if requested, you shall (and [cau]se all Guarant[ors] to) acknowledge [such] Assignment.

**16. Indemnification.** You agree to indem[nify] [illegible] and [illegible] us, any Assignee and our respective agents, employees, directors, off[icers] and sha[reho]lders, h[armless] (on a net after-tax basis) from and against any suits, claims, [illegible]s, damages, [illegible] or other harms suffered (including but not limited to all attorney's fees in[curr]ed and other Enfo[rcem]ent C[osts]) relating to this EFA, any other Contract Documents, Guarant[y], Collateral and/or un[auth]orized [acc]ess to Software or Data.

**17. Choice of [illegible] Servic[e of] Process.** THIS [E]FA AND EACH OTHER CONTRACT DOCUM[ENT] SHALL BE GOVE[RNE]D BY THE LAWS [OF] THE STATE OF NEBRASKA (WITHOUT REGA[RD] TO ITS CONFLICT OF [LA]WS PRINCIP[LES]) REGARDLESS OF THE LOCATION OF THE [CO]LLATERAL. YOU AGREE [illegible] THE OPTION TO CHOOSE THE VENUE, FOR[UM] AND STATE IN W[HI]CH WE COMMENCE ANY LEGAL ACTION OR PROCEEDING ARISI[NG] DIRECTLY OR IN[DI]RECTLY AND/OR OTHERWISE RELATED TO THIS EFA, ANY CONTR[ACT] DOCUMENT A[ND/]OR THE COLLATERAL AND YOU HEREBY CONSENT TO THE NON-EXC[LUSI]VE JURIS[DIC]TION OF THE STATE COURTS OF THE STATE OF NEBRASKA, HALL COUNT[Y] [illegible] U.S. DISTRICT COURT LOCATED IN THE STATE OF NEBRASKA OR, IN THE EVENT THAT THIS EFA IS ASSIGNED BY US, ANY OTHER COURT SELECTED BY THE ASSIGNEE. HOWEVER, IF YOU COMMENCE ANY LEGAL ACTION OR PROCEEDING AGAINST US, YOU MAY ONLY DO SO IN ONE OF THE AFORESAID COURTS LOCATED IN THE STATE OF NEBRASKA. You agree that any service of process shall be sufficiently served if sent to you by a nationally recognized overnight delivery service to your current address on our records and it shall be deemed complete two (2) business days after having been sent to you.

**18. Arbitration.** Any controversy, claim or breach related to this Contract may be settled by arbitration according to the LAWS OF THE STATE OF NEBRASKA; any judgment upon the award rendered by the arbiter(s) may be entered in any court of jurisdiction. Arbitration shall be held in the State of Nebraska under the American Arbitration Association commercial arbitration rules.

**19. Waiver of Jury Trial.** EACH PARTY HEREBY IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION OR PROCEEDING TO WHICH IT MAY BE A PARTY REGARDING ANY MATTER WHATSOEVER RELATED TO THIS EFA, ANY OTHER CONTRACT DOCUMENTS, GUARANTY, SOFTWARE, DATA AND/OR COLLATERAL.

**20. Miscellaneous**

(a) ***Entire Agreement and Amendments.*** The Contract Documents represent the entire agreement between you and us, supersede all prior agreements and communications concerning the matter hereof and may only be amended in writing by mutual consent, except you authorize us to: (i) date and fill blanks; (ii) update contact information and payments as allowed in the Contract Documents; (iii) correct any errors or omissions; and (iv) amend Schedule A.

(b) ***Further Authorizations.*** You authorize us to: (i) sign and file on your beha[lf an]y document we deem necessary to perfect, protect, dispose of, transfer, se[ll o]r enforce [our] interest in the Collateral; (ii) take any action authorized by the Contract [Docum]ents; (iii) [ma]ke claims for, execute and endorse all documents and receive all payments [illegible] or dr[afts] covering loss or damage; (iv) take any other action allowed [illegible] your insu[ran]ce po[licie]s; an[d (]v) grant any of these powers to our agents.

(c) ***Severability and Usury Savings C[lause].*** Any provi[sion] or rem[edy] in the C[ontract] Documents found to be invalid shall not [illegible] the remaining ones. [You] ag[ree] that a waiv[er of] a Default shall not represent a waiv[er of] any other Default, and that [illegible] or failure to enforce our rights does not pr[eve]nt us fr[om] enforcing [our ri]ghts later on. [illegible] amount we bill or collect in excess than what [is a]llowed [illegible] usury laws, if ap[plic]able) shall be deemed a mistake a[nd] we wil[l] [illegible] any such excess amount to the maximum amount permitted b[y la]w or ap[ply i]t again[st yo]ur other Obli[gations].

(d) ***Notices.*** W[e r]eserve th[e ri]ght to se[nd] notices [at o]ur discretion, by personal delivery; by mail, deemed effe[cti]ve three (3) [da]ys after [illegible] or by electronic means (including emails and/or SMS messa[ges], in which [case] you may incur charges from your communications service [provi]der), de[em]ed effective w[hen] sent.

(e) ***Cr[edit a]nd In[for]mation Disclosure.*** You confirm that upon the submission of an application on you[r] [illegible] financing to us, you and each Guarantor authorized us, and further authorize us until all [your O]bligations are satisfied, to obtain any credit, financial, trade and/or business information on you and any Guarantor (and you confirm that each Guarantor provided you with such authorization) from any bank, financial institution, credit reporting agency, trade reference and/or any other person or entity.

(f) ***Communications and Marketing.*** You and any Guarantor expressly consent to receiving communications including email, voice and text messages (including prerecorded, automated and/or artificial messages) from us, our agents and/or our Assignees, for any purpose, including but not limited to marketing or collection purposes, at any email address, residential telephone line or wireless telephone number you provide us now or in the future (in which case message and/or data rate may apply). This consent is not a condition of doing business with, or purchasing any goods/services from, us. You and any Guarantor may unsubscribe or opt-out of any further telemarketing calls or marketing text messages at any time.

(g) ***Survival.*** All your Obligations and our rights shall survive the expiration or earlier termination of this EFA, all other Contract Documents and any Guaranty.

(h) ***Further Assurances.*** At your expense, you shall execute and deliver such additional documents and perform such further acts we may request to effect and preserve our Security Interest and rights under the Contract Documents. You also agree to deliver such information or documents we may request, including insurance certificates, financial statements, tax returns, equipment records, real property waivers and trade or personal banking information.

(i) ***Timing.*** Time is of the essence with respect to your Obligations hereunder.

(j) ***Headings.*** Headings are for convenience only.

**Execution and Chattel Paper.** This EFA and any related Contract Documents may be executed in counterparts manually or by electronic means and, when transmitted to us through any means (including electronic), shall be binding on you for all purposes as if manually signed. The copy of this EFA containing your original or electronic signature and (i) manually signed by us, marked "Original" and in our or any direct or indirect Assignee's possession or (ii) electronically signed by us and stored as an electronic record under our control, shall constitute the original authoritative version of such document for all purposes and shall constitute the sole "chattel paper" as defined in the UCC. **THIS CONTRACT CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

| | | | |
|---|---|---|---|
| CUSTOMER | Ekras Enterprises, Inc | | Amur Equipment Finance, Inc. |
| Signature | DocuSigned by: [signature] 4B660FCB9CA94E6... | Signature | DocuSigned by: [signature] |
| Name | Richard Arthur Howard Jr | Name | McKenzie Niedfelt |
| Title | President | Title | Senior Funding Supervisor |
| Date | 8/8/2023 | Date | 8/9/2023 |

DocuSign Envelope ID:

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.ne

[redacted]

AMUR

Contract No.
[redacted]

# SCHEDULE A – COLLATERAL

This **Schedule A** represents an integral part of the EFA referenced by the Contract Number above.

For the purposes of this EFA, Collateral shall refer to the following Equipment, any collateral in which we have or shall have a Security Interest, ownership and/or title under a separate agreement with the Customer, as well as any additional collateral listed below, in all cases whether now owned or hereafter acquired, together with all personal property installed in, affixed to or used in connection therewith and all present or future: (i) additions, accessories, accessions, attachments, parts, supplies, related software, intellectual property, rights, licenses and improvements thereto; (ii) substitutions, renewals, replacements and purchase options thereof; (iii) insurance, warranty, and other third-party claims; (iv) Customer's rights in connection with a third-party's use of such equipment under a sublease, rental or similar agreement; (v) proceeds and product in any form (including but not limited to insurance and sale proceeds) of each of the foregoing, whether it be cash, non-cash or in any other form; and (vi) to the extent the equipment identified herein is construed as or deemed inventory, that inventory and all accounts, accounts receivable, cash proceeds and all other proceeds related thereto or derived therefrom.

## Equipment

| Description | VIN/Serial Number | Equipment Location | Vendor |
|---|---|---|---|
| 2023 SVL65-2 Enclosed Cab Skid Steer | | 4000 N Henry Blvd, Stockbridge, GA 30281-3816 | Chipper LLC |
| 2022 Iron Rhino IR44 Enclosed Cab Mini Excavator | | 4000 N Henry Blvd, Stockbridge, GA 30281-3816 | Chipper LLC |

COPY VIEW

DocuSign Envelope ID:

[redacted]

AMUR

| Customer Name | Contract No. |
| --- | --- |
| Ekras Enterprises, Inc | [redacted] |

# PERSONAL GUARANTY

This Personal Guaranty (the **Guaranty**) is provided by the undersigned **Guarantor(s)** (also, **you** or **your**) to **Amur Equipment Finance, Inc.** and its successors and assigns (collectively, also **we, us** and **our**) on the date shown under your signature below in connection with the EFA, Lease or other financing agreement identified by the Contract Number above (the **Contract**) by and between **Ekras Enterprises, Inc** (the **Customer**) and us. Any defined term not otherwise described herein shall have the meaning ascribed to it in the Contract or the other Contract Documents defined therein.

**Absolute, Unconditional and Irrevocable Guaranty.** In exchange for the substantial benefit you and the Customer will receive from the transactions giving rise to Customer's Obligations and your obligations under this Guaranty, **you hereby (jointly and severally, if more than one Guarantor) absolutely, unconditionally and irrevocably guaranty to us (i) the full and timely payment of all sums due by Customer under the Contract and other Contract Documents and (ii) the continuing performance and compliance of Customer's Obligations to us.** Each of the undersigned Guarantors further acknowledge, agree and confirm as follows:

1. We are unwilling to enter into the Contract unless this Guaranty is duly executed by all Guarantors.
2. You have read and understood all of the provisions of the Contract Documents, and hereby agree to abide by their Obligations, make all agreements, representations and warranties of a Guarantor therein as if they were contained herein and further acknowledge how they apply to you as Guarantor.
3. We have not made any representation, warranty or statement to induce you to execute this Guaranty, other than as may be set forth herein.
4. After giving effect to this Guaranty, you will remain solvent and will not transfer any assets to any party without full and valuable consideration therefor.
5. You waive (a) all rights and defenses, including suretyship defenses, under the law, equity or otherwise available to a person or entity agreeing to guaranty the obligations of another and (b) all notices, including notices of acceptance, demand, protest and consent to any changes or modifications to the terms of the Contract Documents.
6. Your obligations hereunder shall include all amounts paid by, or on behalf of, the Customer or any guarantor which may be recovered by any person or entity as a preference, fraudulent transfer or conveyance or similar transfer and all of our Enforcement Costs (defined below) related to any action, claims, counterclaims, defenses thereof or other issues related thereto.
7. You shall be obligated to pay us all Enforcement Costs, which represent all attorney fees, other legal fees, costs and expenses we incur by reason of any Default, the exercise or preservation of our rights or remedies, in bankruptcy or otherwise, under the Contract, any Contract Documents or this Guaranty (whether or not you or any other Guarantor are in default thereunder), including all expenses related to the return, recovery, repossession, preservation, refurbishing, advertising, sale, re-lease or other disposition of any Collateral.
8. Our rights and remedies and your obligations hereunder shall not be limited, waived or otherwise altered as a result of occurrences such as amendments, extensions of terms, waivers, invalidity and/or releases of any provision of the Contract Documents, in all cases with or without your direct knowledge thereof.
9. Our failure to perfect our security interest or title in any Collateral shall not affect or impair your obligations to us hereunder.
10. Nothing shall satisfy or discharge your liability hereunder except our written confirmation of the full and complete satisfaction of the Customer's Obligations and your obligations to us hereunder.
11. Until all of the obligations of yours and Customer to us are satisfied, you hereby (i) subordinate any rights of subrogation against Customer to all obligations of Customer and/or any third party to us and (ii) waive any right to seek payment, indemnification, recourse and/or reimbursement from (and/or make a claim against) the Customer, Customer's assets, any third party and/or any other source, to recover any payments or performance by you hereunder.

**Enforcement.** We can enforce this Guaranty (and/or bring a separate legal proceeding) directly against you, irrespective of whether the enforcement and/or legal proceedings are also brought against the Customer and/or any other Guarantor, in the event you fail to comply with the terms of this Guaranty, you breach any representation herein and/or an Insolvency Event or Dissolution Event occurs.

**Assignment.** You shall not assign or delegate any of your obligations under this Guaranty, which shall be binding upon your heirs, successors and assigns and shall inure to the benefit of our successors, representatives, affiliates and assigns. We may sell, transfer, assign or otherwise convey to any affiliated or unaffiliated person or entity, without notice to you or your consent, any or all of our rights, interests and benefits (in whole or in part) under, or connected with, this Guaranty.

**Choice of Law and Service of Process.** THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEBRASKA (WITHOUT REGARD TO ITS CONFLICT OF LAWS PRINCIPLES) REGARDLESS OF THE LOCATION OF THE COLLATERAL. YOU AGREE THAT WE HAVE THE OPTION TO CHOOSE THE VENUE, FORUM AND STATE IN WHICH WE COMMENCE ANY LEGAL ACTION OR PROCEEDING ARISING DIRECTLY OR INDIRECTLY AND/OR OTHERWISE RELATED TO THIS GUARANTY AND YOU HEREBY CONSENT TO THE NON-EXCLUSIVE JURISDICTION OF THE STATE COURTS OF THE STATE OF NEBRASKA, HALL COUNTY OR THE U.S. DISTRICT COURT LOCATED IN THE STATE OF NEBRASKA OR, IN THE EVENT THAT THIS GUARANTY IS ASSIGNED BY US, ANY OTHER COURT SELECTED BY THE ASSIGNEE. HOWEVER, IF YOU COMMENCE ANY LEGAL ACTION OR PROCEEDING AGAINST US, YOU MAY ONLY DO SO IN ONE OF THE AFORESAID COURTS LOCATED IN THE STATE OF NEBRASKA. You agree that any service of process shall be sufficiently served if sent to you by a nationally recognized overnight delivery service to your current address on our records and it shall be deemed complete two (2) business days after having been sent to you.

**Arbitration.** Any controversy, claim or breach related to this Guaranty may be settled by arbitration according to the LAWS OF THE STATE OF NEBRASKA; any judgment upon the award rendered by the arbiter(s) may be entered in any court of jurisdiction. Arbitration shall be held in the State of Nebraska under the American Arbitration Association commercial arbitration rules.

**Waiver of Jury Trial.** EACH OF THE UNDERSIGNED IRREVOCABLY WAIVES THE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION OR PROCEEDING TO WHICH IT MAY BE A PARTY REGARDING ANY MATTER WHATSOEVER RELATED TO THIS GUARANTY, THE CONTRACT DOCUMENTS AND ANY COLLATERAL.

**Further Assurances.** At your expenses, you will execute and deliver such further documents and perform such further acts as reasonably requested by us in order to give effect to the terms and conditions contemplated herein. You also agree to deliver such information or documents we may request, including, without limitation, financial statements, tax returns, and trade or banking information.

**Credit and Information Disclosure.** You hereby authorize us to obtain, until all your obligations hereunder are satisfied, any credit, financial, trade or business information on you from any bank, financial institution, credit reporting agency or any other person or entity.

**Notices.** Notice can be sent to your address on our records (i) by First Class US mail and deemed effective three (3) business days thereafter or (ii) by personal delivery, telecopier or email and deemed effective when delivered or sent, respectively.

**Amendments.** This Guaranty can only be amended in a writing signed by you and us. You agree that this Guaranty represents the entire agreement between you and us pertaining to the subject matter hereof and supersedes all prior agreements and communications concerning the same.

**<u>SIGNATURE PAGE FOLLOWS</u>**

DocuSign Envelope ID:

[redacted]

AMUR

| Contract No. |
| --- |
| [redacted] |

**Execution.** This Guaranty may be executed in counterparts manually or by electronic means and, when transmitted to us through any means (including electronic), shall be binding on you for all purposes as if manually signed. **THIS GUARANTY CONTAINS AN ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.**

| GUARANTOR | Richard Arthur Howard Jr |
| --- | --- |
| Signature | DocuSigned by: [signature] FCB9CA94E6... |
| Date | 8/8/2025 |

DocuSign Envelope ID:
THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

[redacted]

AMUR

| Customer Name | Contract No. |
|---|---|
| Ekras Enterprises, Inc | [redacted] |

# CONTRACT AMENDMENT

This amendment (the **Contract Amendment**) is provided to **Ekras Enterprises, Inc DBA Ekras Painting** (the **Customer**, also **you** or **your**) by **Amur Equipment Finance, Inc.** and its successors and assigns (also **we**, **us** and **our**) and represents a Contract Document under the EFA, Lease or other financing agreement identified by the Contract Number above (the **Contract**). Any defined term not otherwise described herein shall have the same meaning ascribed to it in the Contract or the other Contract Documents defined therein.

This Contract Amendment shall amend the Contract Documents as shown below and shall be deemed to have been in effect since the day we executed and dated the Contract. Failure to comply therewith shall represent a Default under the Contract Documents. All other terms and conditions of the original Contract Documents not inconsistent with this Amendment Agreement shall remain in full force and effect.

The Customer's name is changed to Ekras Enterprises, Inc DBA Ekras Painting

**Execution. This document may be signed manually or by electronic means and, when transmitted to us through any means (including electronic), shall be binding for all purposes as if manually signed.**

| Amur Equipment Finance, Inc. | |
|---|---|
| Signature | DocuSigned by: Mckenzie Medfelt |
| Name | McKenzie Medfelt |
| Title | Senior Funding Supervisor |
| Date | 8/9/2023 |

COPY VIEW

DocuSign Envelope ID: [redacted]

AMUR

| Customer Name | Contract No. |
|---|---|
| Ekras Enterprises, Inc | [redacted] |

# EQUIPMENT ACCEPTANCE CERTIFICATE

This document (the **Acceptance Certificate**) is executed by **Ekras Enterprises, Inc** (the **Customer**, also **you** or **your**) in favor of **Amur Equipment Finance, Inc.** and its successors and assigns (collectively, also **we**, **us** and **our**) and represents a Contract Document under the EFA, Lease or other financing agreement identified by the Contract Number above (the **Contract**). Any defined term not otherwise described herein shall have the same meaning ascribed to it in the Contract or the other Contract Documents defined therein.

**As of the Acceptance Date set forth below, you (i) unconditionally and irrevocably accept the equipment listed in the attached Schedule A, together with all records, manuals and instructions (the Equipment) and (ii) agree to be responsible for, perform and comply with, all of the Obligations, terms and conditions of the Contract Documents.**

In connection with your acceptance of the Equipment, you acknowledge and agree as follows:

(1) You selected the Equipment, accept it AS IS and WE MAKE NO EXPRESS OR IMPLIED WARRANTIES WHATSOEVER AS TO ITS MERCHANTABILITY AND/OR FITNESS FOR A PARTICULAR PURPOSE; you selected any Software included with the Equipment, you assume all liability related to any unauthorized access or use of the Software and any Data collected, stored or used by it and we do not own or license any Software or Data nor have any duty to configure, maintain and/or otherwise safeguard them; YOU WAIVE AGAINST US, AND WE SHALL NOT BE LIABLE FOR, ANY CLAIM FOR LOSS, INJURY OR DAMAGE CAUSED BY THE EQUIPMENT, SOFTWARE AND/OR DATA, INCLUDING BUT NOT LIMITED TO, ALL SPECIAL, CONSEQUENTIAL, INCIDENTAL, PUNITIVE OR EXEMPLARY DAMAGES; and you shall look only to the vendor or manufacturer (not us) for any claim related to Equipment or Software, which shall not relieve you of any Payment or other Obligation under the Contract Documents.

(2) Neither the Equipment vendor nor any of its salespersons or other agents are agents of ours or authorized to waive or modify any term or condition of this document or the other Contract Documents.

(3) The Equipment has not been delivered, installed and/or accepted on a trial basis.

**Execution.** This document may be signed manually or by electronic means and, when transmitted to us through any means (including electronic), shall be binding on you for all purposes as if manually signed.

| CUSTOMER | Ekras Enterprises, Inc |
|---|---|
| Signature | DocuSigned by: |
| Name | Richard Arthur Howard Jr |
| Title | President |
| Acceptance Date | 8/8/2023 |

[redacted]

FILED & RECORDED
Wednesday, August 9, 2023 10:16:12 AM
File Number:
Niki Sewell
Coweta County Clerk of Superior Court

# UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT SUBMITTER (optional)
CSC

B. E-MAIL CONTACT AT SUBMITTER (optional)

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

[redacted]
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Georgia
(Central Index - Coweta County)

SEE BELOW FOR SECURED PARTY CONTACT INFORMATION

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME Ekras Enterprises, Inc | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS 4000 N Henry Blvd | CITY Stockbridge | STATE GA | POSTAL CODE 30281 | COUNTRY USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS PO BOX 2576 UCCSPREP@cscinfo.com | CITY Springfield | STATE IL | POSTAL CODE 62708 | COUNTRY USA |

4. COLLATERAL: This financing statement covers the following collateral:
2023 SVL65-2 Enclosed Cab Skid Steer
2022 Iron Rhino IR44 Enclosed Cab Mini Excavator

The equipment financed under Contract 1149181 listed above, whether now owned or hereafter acquired, together with all personal property installed in, affixed to or used in connection therewith and all present or future: (i) additions, accessories, accessions, attachments, parts, supplies, related software, intellectual property, rights, licenses and improvements thereto; (ii) substitutions, renewals, replacements and purchase options thereof; (iii) insurance, warranty, and other third-party claims; (iv) Debtor's rights in connection with a third-party's use of such equipment under a sublease, rental or similar agreement; (v) proceeds and product in any form (including but not limited to insurance and sale proceeds) of each of the foregoing, whether it be cash, non-cash or in any other form; and (vi) to the extent the equipment identified herein is construed as or deemed inventory, that inventory and all accounts, accounts receivable, cash proceeds and all other proceeds related thereto or derived therefrom.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: [redacted]